The next case today, number 231871, United States v. Jose Cartagena. Will counsel for appellant please come up and introduce yourself on the record to begin. Good morning, your honors. Good morning. Counselor Luis Rafael Rivera on behalf of appellant Jose Cartagena. Essentially your honor, this is a case dealing with several police officers who several years ago had a run in while they were patrolling the streets of Puerto Rico, in Catalina specifically. They observed a drug trafficking scene where two individuals were dealing with drugs. They initiated their pursuit of one of the individuals who mounted the bicycle and after pursuing him, several actions took place. Apparently, one of the officers shot at him in the back. That is what comes out from the evidence in this case. He was supposedly injured in the back of his body, but there was not a definite entry wound in this case. So he was arrested, taken to a hospital. He was dealt with by the state prosecution and he pled guilty to drug trafficking. Eventually, the United States received evidence from our client, in this case was Mr. Cartagena, who was a police officer at that time, and he became a CI, a confidential informant.  Yes, sir. Time is limited. Yes, sir. A couple of questions about your confrontation clause challenge. Yes, sir. First, would you agree that that argument affects only count one? That is correct, Your Honor. Okay. And then second, as you saw, the government argued that the confrontation clause error here in the cross-examination or the inability to question the victim about the information provided to the testifying expert was harmless. Yes, Your Honor. I saw that. That is a harmless error question, please. Of course, I don't agree with that assertion. I think that conclusion is flawed in the sense that the pathologist in this case, who was called to testify as an expert witness, will only testify to the injuries that this person, this minor, a 17-year-old minor, had received at that time. But then she expanded on her testimony and she said that she met the agents, that she met the minor, and she elicited many factors, many details about the minor's testimony. But the principal thing was that the victim had told the doctor that he had been struck in the back of the head with the butt of a pistol. That is correct, Your Honor. That's the critical point. That's it? Because that deals with... The government says we've got plenty of other evidence of that point, so the mistake here, although the government doesn't concede it was a mistake, but if it was a mistake, it was harmless because of our other corroborating evidence. Could you address that, please?  Specifically. I would like to reserve three minutes, if I may, for rebuttal. Essentially, Your Honor, I don't think it's harmless at all. You can reserve two minutes, which we'll take off now, although that's unorthodox. If counsel want rebuttal, they should ask for it at the start of their argument. Very well, Your Honor. Thank you. I think that the testimony of this witness provided through the mouth of a pathologist is improper, number one. And that's... I totally get that, okay? Yes. I'm asking you... The government... Look, let's be specific. The government is saying Officer Lopez says she saw the defendant hit the Carvajal, the suspect, with the butt of his pistol, and that the defendant himself told FBI agent Doyle that that's what he did. Could you tell us about the defense case or any other argument to the effect that would show that this is disputed and therefore not harmless beyond a reasonable doubt? Yes, Your Honor. Number one, Caleb told that pathologist during the interview that he was shot in the back, that he was hit by a weapon in the head, and that he was hit several other times by a vehicle. So that will impact other counts. I think it was count three or count four. Specifically, Your Honor, he also went into explaining what he was doing there, how he was running. That's not what Judge Hamilton is asking you. He's asking you why the other evidence proving that your client struck this young man in the head isn't sufficient such that the pathologist's testimony is harmless. It shouldn't be harmless because that pathologist is a very well-known person in Puerto Rico, a very well-liked professional who has testified in thousands of cases, and she had a force of credibility in this particular case that Mrs. Shirley Lopez, who was a rogue agent, had other cases and her credibility was compromised. So I believe that the testimony of this pathologist was essential and that she recalled and stated the full testimony that Caleb told her during the interview. So that wasn't proper. He testified about the butt hitting, about the hitting of him in the car, about the pursuit. She laid out all the elements of the offense through the testimony of Caleb in court. But Cartagena did it. I'm sorry, Your Honor. I'm sorry. She doesn't testify that Caleb said it was Cartagena who did it. She just says these are the injuries reported by Caleb and how they happened, but not who did it, right? No. She never said that it was Cartagena who did it. That is correct, Your Honor. However, she went on to explain all the particulars and all the scenario concerning the hitting, the running, the bicycle, everything else, and everything that happened at the station. That doesn't really focus in on the question about the blow to the head with the pistol, which is what count one is about, right? That's correct. Did the defendant testify in this case? Yes, Your Honor, he did. What did he have to say, if anything, about his interview with Agent Doyle where Doyle said the defendant admitted to hitting the victim with the pistol? To the best of my recollection, he did not say, he stated in court, he testified he did not say that to Agent Doyle. He was a C.I. at that time, and apparently, for whatever reason, the FBI decided not to use him as C.I. And then did, and you cross-examined Doyle? I did, Your Honor, I did. And challenged the credibility of that assertion? Of course, Your Honor, yes. And what did Cartagena say on his testimony? Does he not admit to having at least touched the victim with the gun? He did, Your Honor. He said that he had thrown his weapon out, that he was running after him. After he fell from the bicycle, he arrested him with his gun on his right hand. And he said that at a certain point, his gun touched, as far as I recall, touched his head. But he did not hit him. So it's a touch and a hit? That's right. In order to handcuff him, he had to press his head down with his right hand and then try to handcuff him with his left hand. If I recall correctly, and please let me know if I'm wrong about this, on this question of hearsay and confrontation clause, the district judge didn't go through any kind of analysis under rule of evidence 703, did he? No, he did not, Your Honor. I objected to that evidence on hearsay grounds, and he just overruled. Without much explanation. That is correct, Your Honor. All right. Thank you. Thank you. Thank you, counsel. Will the attorney for Appley please come up and introduce yourself on the record to begin? Good morning, Your Honors. And may it please the court, Harmeet Dhillon, Assistant Attorney General for Civil Rights. On behalf of the government, which is seeking an affirmance of the conviction below, and I'll just jump right into the confrontation clause issue, if that's okay with the court. It is the United States' position that there is no confrontation clause violation, and that secondly, even if there were, that is a harmless error given the prolix sufficiency of the evidence in the record to support the conviction in this case on all four of the  First of all, Smith v. Arizona, the recent Supreme Court precedent on this case, we believe is not, is kind of a red herring argument here, because that case, of course, goes to a effectively substitute expert, really being a ventriloquist almost for the expert whose testimony is missing. I agree with all that, but it does seem, you know, what happened to this person was the centerpiece of the trial. The government does not call the person. The government then decides to call this expert, and it does look like a way to get the victim's story in without subjecting the victim to the crucible of cross-examination is to have the expert testify to what the victim told her. On its surface, stated like that, it does feel like that's problematic. Understood Judge A. Freeman. That is the argument made by appellant that this was some kind of Machiavellian scheme. That's the phrase used in the briefing on this case. However, when you look at the record and the appendix and the actual testimony. What's the non-truthful reason you needed it? Well, it was context for multiple statements that, conflicting statements that were elicited actually during the testimony. She's not there to figure out the, I mean, her job is to say, as a medical or forensic analysis, this is how this person was injured. And I guess I'm wondering, to understand that, and you go through all the sort of usual things that lead to her conclusion, which I fully understand. Why is it necessary to tell the jury, and the story of the victim is X. Yes, your honor. The question that was asked to which she answered was, is the analysis that you have given of the forensic evidence, the review of the medical notes, the review of all of the evidence in the case, and the 66 pages of, 60 plus pages of expert report, is it consistent with the story you were told? And the cross-examination actually elicited a different story, which was that when CC, the victim, came into the hospital. The relevant point is, is it consistent with someone being pistol whipped, or is it consistent with someone having a brush with a gun? So the details of how it occurred, I don't know the reason for introducing that, other than to prove the truth of the matter. Well, I understand that that is the argument. However, there is... What's wrong with the argument? Well, there is extensive evidence. It is harmless error. So first of all, I understand the court's resistance to our argument here, and the basis for it. I was not the trial attorney in this case. It was... So is your real argument harmlessness? I mean, I understand... I will turn to that argument if I may. The harmless error argument is that there was extensive evidence in the record to support the basis for the fact that this defendant, appellant, misrepresented numerous facts over the course of four different interviews, over the course of months with the FBI. He admitted to... Counsel, if I can short-circuit this a little bit. I think it was clear from the defense argument that the Confrontation Clause challenge affects only count one. That is correct, Your Honor. And I don't think there's any serious doubt about sufficiency of evidence for any of the  Certainly, there's sufficient evidence to convict on count one. The question is whether the disputes about the government's evidence can be dismissed in such a way as to treat an error on Confrontation Clause, this error, as harmless. So let's focus on count one.  Yes. Yes, Your Honor. So first of all, if there were a Confrontation Clause problem with the testimony at issue, that is the out-of-court statement of C.C., the victim, the appropriate remedy would be to exclude that out-of-court statement. That would be my first argument. My second argument would be, if the court believes that a further remedy is required, the appropriate remedy would be to exclude the evidence of the pathologist as to count one. Even so... What you're talking about at this point, we're here reviewing a matter that's already occurred. We are the appellate courts. Yes. What do you mean, exclude it? I'm talking about the analysis as to whether it's harmless or not. When you exclude that from the weight of the evidence, you look at whether the remaining evidence is sufficient. I'm sorry if I was imprecise. What's the other evidence? Sorry. Not whether it's sufficient. Right. It is sufficient. It has to be. But the question is whether the error is harmless and because everything else is so overwhelming. Well, so when we turn to that point, we look at whether the, well, I mean, I think that actually is the point. The error is harmless because of the volume of other evidence to support this conviction. Let's go through it. So let's really focus. It has to be harmless beyond a reasonable doubt. Correct. It has to be a constitutional error that's been alleged. So we are asking about count one, which is the pistol whipping of the victim. Right? Yes. We're all in agreement so far. Yes. So what we want to know is there was testimony by this expert that the victim said, I was pistol whipped. We're now presuming that's excluded. Tell me what is left to fill the gap beyond a reasonable doubt that this victim was pistol whipped. That's what we want to know. Well, FBI agent Doyle testified that Cartagena admitted in multiple meetings over the course of several months, four different meetings with the FBI agent, that he tackled CC and hit him over the head with his gun. That's the key admission from the mouth of the defendant that came into evidence in this case. Doyle testifies as to an 801D statement by Cartagena or multiple statements by Cartagena. And the response was, but Doyle had credibility problems, therefore that couldn't carry the day. What's your response to that? Well, the defense had the opportunity to test that in court and the jury didn't credit it. I beg your pardon? The defendant denied making those statements, correct? Well, in court he didn't, but to the, to, to agent, to in his testimony in trial. That's correct. He didn't dispute Doyle's account. He, he did, I believe. Yes.  So, that starts to sound like a credibility problem. Well, which was, which was, all this evidence came in and it was resolved by the jury. That's right. The jury convicted. Obviously we understand that. But the problem is, because you have a potential error here of constitutional magnitude, it's not enough to say this would survive a Rule 29 motion, which is what you're trying, sort of telling us. The question for us is, was it so compelling that this erroneous evidence had no effect? So, it's not enough to just say the jury convicted. If this, if we read the record ourselves, this is an exercise we do. Yes. And we read the record, we start to say, well, the cross-examination of Doyle, of Cartagena, you know, about Doyle was sufficiently compelling, maybe not enough to carry the day, but it might be enough to carry the day to say that the error wasn't harmless. Do you follow that? I understand. So, what you've told us is Doyle testified as to Cartagena's statements, which Cartagena disputed. What else? Well, Doyle also testified as to Cartagena reenacting the tackling and the pistol whip in the course of his interview. So, it wasn't just admissions, but it was, you know, reenactment. I mean, again, perhaps a little more colorful. And, you know, that is the evidence on that first count. The other evidence goes to other counts. It all comes from Doyle, just to be clear. That evidence all comes from Doyle. That is correct. The other evidence that came in for other witnesses comes on to the other counts. You've got Lopez as well, right? Lopez, Officer Lopez testified to witnessing Cartagena strike Cece on the back of the head with the butt of his gun. That's correct. That's at document 518, Your Honor. Right. And then, what do we know about her credibility cross-examination? Again, we've got the defendant testifying to the opposite trial, right? Well, all of these witnesses, except for FBI agent Doyle, the police witnesses have credibility issues. I think that's fair to say. That's our problem. That's the point. You have the pathologist whose counsel says is so respected and gave oomph to the testimony of two witnesses that have credibility issues. Yes, I understand. That is definitely a challenge here, and our government position is that the error is harmless because of all of the other weight of the evidence in this case. Any officer issues or why these are tough cases to prosecute, right? That is correct, Your Honor. Are there any other questions from the court? Thank you, counsel.  Thank you, counsel. Attorney Rivera-Rodriguez, you have a two-minute rebuttal. May it please the Court? Again, Your Honors, the testimony of the police officer, Shirley Lopez, was totally compromised. She had been indicted before this case ever was indicted for a police corruption case, a huge police corruption case in Puerto Rico. I'll accept that for right now. Can you focus on Doyle because that's what the government really focused on? Essentially, Doyle was angry that this police officer told about this event and supposedly did not tell him all that transpired in that situation. That's why they withdrew their C.I.'s title because at the time that all this information came forward was because Cartagena put it forward to them. Do you agree Cartagena did give additional information as time went on? Yes, Your Honor, he did. And the first interview with the FBI wasn't completely forthcoming, correct? Well, essentially, apparently the FBI wasn't really concerned about this situation at the beginning. They just started focusing on that situation. So he painted a picture about the corruption issues that were going on in that prison. But they were not really concerned at the beginning with this particular case. So eventually they did. For whatever reason they did, and then Cartagena became a target. And that's when they started interviewing him several more times. But I believe that the confrontation clause was violated in this case, that the government was able to bring testimony through the back door through a well-known pathologist in Puerto Rico, and that really was harmless beyond any point. Thank you, Counsel. Thank you, Your Honor. That concludes arguments in this case.